Amy L. Nilson
3735 Senter Road
San Jose, CA 95111
TEL: (408) 401-7924

Attorneys for:

FILED

2007 DEC 10  A 10: 47

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY L. NILSON,  <br>  Plaintiff,  <br>  v  <br>  KINDER MORGAN ENERGY PARTNERS INC., THE CITY OF SAN JOSE, SAN JOSE WATER COMPANY, SANTA CLARA VALLEY WATER DISTRICT. AND THAT OF DOE DOES (1-?), ET AL.  <br>  Defendants. | Case No. C07-03686 JW  <br><br>  **CLASS ACTION**  <br><br>  **SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL** |

CLASS ACTION  SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -
Case No. 5:07 - cv- 3686

Plaintiff, Amy L. N... ("Nilson") brings this action on b...lf of themselves, all others are similarly situated and in the interest of the general public, and Doe does (1 -2000) of that ("Casa Del Largo"). The allegations pertaining to the Plaintiffs are made upon personal knowledge. The allegations pertaining to the Defendants Kinder Morgan ("San Jose Terminal"), the City of San Jose ("Environmental Department"), ("City Council"), and that of the San Jose Water Company ("Waste Water Treatment Plant"), and that of the Santa Clara Valley Water District ("Coyote Creek Channel Flood Plane") hereinafter all referred to collectively as "defendants" are made upon information and belief formed after an inquiry reasonable under the circumstances.

## I.   INTRODUCTION

1.   This action is brought on behalf of the tenants and sub-tenants of ("Casa Del Largo") and Plaintiffs individually, as representatives of the common or general interest pursuant 33 U.S.C. §1365 sec. 505 of a "Citizens Lawsuit" (2007), and that of unknown persons Doe does (1 – 2000).

## II.   GENERAL FACTUAL ALLOGATIONS

A.   **The Parties**

2.   Plaintiff, Amy L. Nilson, resides in Santa Clara County, California. "Nilson" is the lead acting agent representing the facts and allegations submitted against the defendants, in excess of damages of more than $75,000, pursuant FRCP 23 (1) (a) as acting lead plaintiff, as provided under the local rules pursuant 28 U.S.C. §1331, §1365 et. seq.

-2-

CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -
Case No. 5:07 - cv- 3686

3. Plaintif[f] ...g this action on behalf of themselv[es] ...ll others similarly situated, and or for the general interest.

4. Defendants, Kinder Morgan Energy Partners Inc., ("KMEP/KMP") 500 Dallas St., Suite 1000 Houston, TX 77002, at all times relevant herein, Kinder Morgan "San Jose Terminal" is a distributor of bio-diesel fuels, and all other components to include: Mid-grade blending, Ethanol (sequential) blending, CARB detergent additive, Diesel red dye injection systems. ("Kinder Morgan San Jose Terminal") 2150 Kruse Dr, San Jose, CA 95131, is owned and operated by ("KMP") and is a corporation under the laws and treaties of the United States.

5. Defendants, the City of San Jose, ("Environmental Department"), ("City Council"), ("Housing Authority"), ("Municipal Works"), and ("Redevelopment Agency") at all times relevant herein, is the issuer of NPDES waste water permits, and is the initial agent in the decision process for "municipal" waste water, and all other distribution system components. The City of San Jose is a "public entity" under the laws and treaties of the United States and has its principal place of business at 200 E. Santa Clara Street, San Jose, California 95113.

6. Defendants, the San Jose Water Company ("Waste Water Treatment Plant"), at all time relevant herein, San Jose Water Company, main supplier of "potable water sources" and all other distribution system components under the laws and treaties of the United States and has its principal place of business at, 374 W. Santa Clara Street, San Jose, California 95196.

7. Defendants Santa Clara Valley Water District ("Coyote Creek"), "point source" waste water run-off applications, ("flood control channel") Coyote Creek/ Montague Expressway, is a "public entity" under the laws and treaties of the United States and has its principal place of business at 5750 Almaden Expressway, San Jose, CA 95118-3686.

-3-

**CLASS ACTION  SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -**
Case No. 5:07 - cv- 3686

8. The P!... on information and belief, at all ti... mentioned herein, each and every defendant, including Doe does (1_?), was the owner, agent, principal, employee, employer, . . . partner, franchiser, franchisee, or joint venture of each of his or her co-defendants, and in doing these actions described below was acting within the scope of his or her authority in such ownership, agency, employment, service, partnership, franchise and joint venture and with the permission and consent of each co-defendant. Each of said Doe does (1_?) is therefore liable under the law, including but not limited to, under the doctrines of respondeat superior "causing the civil harm" of the agencies ability to enact or to cause the acts, omissions and injuries inflicted upon and or likely to be inflicted upon the plaintiff and the General Public as described herein.

### III.   BACKGROUND

**A.   False endorsement under the provisions of the Federal Water Pollution Control Act.**

(a) Since Jan. 1, 2003, KMEP faces an assessment of civil penalties under 33 U.S.C. §2136, of which resulted in the release of more than five thousand gallons – twenty two thousand gallons of toxins (under the current air-sparging waste management system). This has resulted in the concealment of the average release of contaminates of $CO^2$ and or other toxic waste burned off from the main "point stack" located within 1.5 miles of residential housing.

(b) The amount of toxic chemicals released from this site, cannot be measured effectively due to the ecological, geological, and hydrological associations ascertained by the age and physical features of KMP's terminal processing abilities, however through the use of data information of the output, or outflow units of measurements included in its total output, would conclude its total loss of product in association with distribution of materials, however in such a case, the measurement of the natural gas pipeline used in the burning of "toxic" chemicals, and/ or

-4-

**CLASS ACTION  SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -**
Case No. 5:07 - cv- 3686

1 | exhaust from the "transfer stations" uses limited testing measures that conclude the
2 | output, and/or outflow of contaminates released into the air.

**B. Failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.**

(a) In order to determine whether conduct falls within the discretionary function supervision over its day-to-day activities. 380 U.S. at 291 states that the "Courts must be vigilant to ensure that the agency's procedures and underlying standards are in accord with the law". [See Exhibit D Doc. Proposed Negative Mitigation Declaration].

**C. Failure to maintain Federal Compliance with Pollution Control Standards.**

(a) Delegated responsibilities under the Act include authority for qualified (EPA) administrators of the "state" to issue discharge permits to industries and for "municipalities" (City of San Jose Environmental Department) to enforce permits. The National Pollutant Discharge Elimination System (NPDES) program (authorized in section 402 of the Act), requires the discharger (source) to attain technology-based effluent limits (BPT or BAT) for industry, or more stringent applications for water quality protection. Permits are issued for 5-year periods and must be renewed thereafter to allow continued discharge. These permits specify the technology applicable to each pollutant, the effluent limitations and all discharge is recorded.

**IV.   JURISDICTION AND VENUE**
**(Federal question and diversity jurisdiction over the subject pursuant 28 U.S.C. §1331)**

9. Pursuant to Rule 3-9 Parties (a) Natural Person Appearing Pro Se, and that of L.R. 10-1 Amended Pleadings. Plaintiffs seek declaratory judgment of that of the Lead Plaintiff

-5-

CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -
Case No. 5:07 - cv- 3686

and (Doe does 1-1000) pursuant 40 CFR ("SEP"), amending Section 505 of the "Clean Water Act", and seeks a permanent injunction under the amendment pursuant 41 CFR §818, pursuant 28 U.S.C. § 1332 (d) (1) (b) filed under rule 23 of the Federal Rules of Civil Procedure or similar authorizing of an action to be brought by 1 or more representative persons as a class action.

10. Pursuant to 28, U.S.C., 1940 ed., Sec. 921 (Aug. 2, 1946, ch.753, Sec. 403, 60 Stat. 843). "Dispute resolution under the provisions of subchapter IV of chapter 5 of title 5, to settle any tort claim against the United States, to the extent of the agency's authority to award, compromise, or settle such claim without the prior written approval of the Attorney General or his or her designee . . .[S]ubject to the provisions of this title relating to "civil actions on tort claims against the United States, any such award, compromise, settlement, or determination shall be final and conclusive on all officers of the Government, except when procured by means of fraud".

11. Therefore setting under the original and amended complaint pursuant 28 U.S.C. § 1331 (2005) under Federal question, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, and treaties of the United States".

V.   **CLASS ACTION ALLEGATIONS**

12. Plaintiffs bring this action on their own behalf, and on behalf of all other persons similarly situated (the Classes), in addition to the general public, pursuant to the provisions of CCP § 382 and CC §§ 1781.

13. The 880/ Montague Expressway/ Kinder Morgan, San Jose Terminal site, also known as ("KMP"), is located 1.5 miles west of Casa Del Largo Mobile Home Park Community, in Santa Clara County. Ground water contamination by the service terminal for diesel and diesel fuel additives has caused the contamination of ("San Jose Water Co.") public water services

-6-

CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -
Case No. 5:07 - cv- 3686

adjacent to Kinder Morgan.

14. "Kinder Morgan", formerly known as ("Santa Fe Pipeline") is a fueling station and diesel fuel and diesel additive processing facility. The other area of the site is operated by Shell Oil Products US, formerly known as ("Equlion") is also a fuel terminal facility. Pursuant the "Clean Water Act" Shell Oil Products US completed soil removal and replacement of black top surface, in the prevention of soil contamination. Kinder Morgan fell in suit to address the soil contamination through the construction of a soil-vapor extraction system, now owned and operated by ("the San Jose Water Company"), that is used in air-sparging ( a system that injects Liquid Carbon Dioxide into contaminated water) system design. The essential goal in designing and air-sparging system is to protect the ground wells used in configuration with:

A. **The advantages of air-sparging system include:**

1. Optimize the influence on the plume, thereby maximizing the removal efficiency of the system, and

2. To Provide optimum monitoring and vapor extraction points to ensure minimal migration of the vapor plume and with little unknown detection of migration of either the dissolved phase or vapor phase plumes.

B. **The disadvantages of the system include:**

1. Cannot be used if free product exists (i.e., free product must be removed prior to air sparging).

2. Cannot be used for treatment of confined aquifers.

3. Stratified soils may cause air-sparging to be ineffective (in the abatement of Diesel fuels and Diesel fuel additives).

4. Potential for inducing migration of constituents.

5. Requires detailed pilot testing and monitoring to ensure vapor control and limit migration (or creation of a sump) or swollen hollowing out of the ground in mitigated areas of use.

-7-

**CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -**
Case No. 5:07 - cv- 3686

15. The "Negative Mitigation Declaration" indicates that its decision conflicts with the comprehensive plan of a flood control area, and in re-zoning residential housing, has produced in-adequate findings to show that its decisions were made in accordance with the comprehensive plan, that the operation of the Kinder Morgan San Jose Terminal is environmentally safe in that:

    A. there will be no discharge of water off the property; and

    B. the tailings (source material with less than 500 parts per million) produced are not hazardous; and

    C. there will be no significant air pollution; and

    D. there will be no significant problem with the carcinogenetic materials produced; and or produced in their most soluble form, and or for the removal and discharge to a licensed waste site; and

    E. the site can be adequately reclaimed.

16. That in fact in rezoning Rock Ave adjacent to pipelines owned and operated by Kinder Morgan, failed to devise a comprehensive plan to prevent contamination, and that of abuse of residence situated beyond the "sound wall", and failed to take into account the impact of its decision on other land use in these areas.

17. That in local housing authority under the Davis-Sterling Common Interest Development Act, that specifies land specifically zoned for commercial and industrial common interest development. Including: provisions for the "redevelopment agencies" (to act in the rehabilitation of residential structures), including certain mixed-use residential/ commercial structures, outside the project area.

-8-

CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -
Case No. 5:07 - cv- 3686

18. A declaratory judgment will terminate the controversy between the parties.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Failure to Implement And Maintain Reasonable Water Quality Assurance)**

19. Plaintiffs repeat and reallege paragraphs 1 through 18.

20. Defendants San Jose Water Company's procedures following (Liquid Carbon Dioxide), does little to prevent these contaminates from flowing through back-flow operations, and in fact is used as a remedy to clean the sludge from the piping. This alternative to the air-sparging system initiates the sell and use of "surface water", and or other services as provided through irrigated/ recycled water, however, these operations are not standard/ or of best practices for "potable" water "back-flow" and "drinking water" operations.

21. The projects initial phase development has been restricted to all possible outlets to function properly, under the Clean Water Act, through the use of a sound wall, that covers the exterior side of the flow from the stack [See Exhibit E graphics] of the effected area adjacent ("Coyote Creek Trail"). Indications in the failure in modifying manufacturing of additives, and or addition of red dyes and diesel – ethanol accelerant has increased 12% shift or change in product levels. However Kinder Morgan's dependency on bio-diesel has increased by 25%. That the amount of consumption obtained by this facility allows for the continual burning off of natural gas and diesel fuels, and diesel fuel additives, or red dyes added . . . [1] [r]esulting in an overall increase in the area of the plume that has caused decrease in lung function, increases incidents of asthma, and chronic lung disease.

-9-

CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -
Case No. 5:07 - cv- 3686

22.     These problem. .rom the initial works and area nec .to provide regulatory standards for the increased dependency of a nuisance. The rezoning of "BFI Waste Systems" abandoned property resulted in the mitigated clean up required monitoring by the California Regional Water Quality Control Board, San Francisco Bay Region, 1515 Clay Street, Suite 1400, Oakland, CA 94612. The use of Under Ground Tanks for BFI's Maintenance and Fuel Terminal site, which had caused the contamination of under-ground geological and hydrological features of the soil, well and "ground water" adjacent "creek" areas. The use of air-sparging has caused the soil erosion along the creek, and also revealing a leak in an old abandoned waste stream used by "BFI Waste Systems". As provided by the City of San Jose to issue a "waste steam" permit, as appropriated by "Santa Clara Valley Water District", in their allocation of land assets along the "Coyote Creek Flood Plane".

23.     Violation have been reported as early as 2005 of known "class" concerns by persons affected by the notification of "burdened property" abandoned in 1989 due to ground contamination for ("UST"), and fuel terminal, and maintenance and wash area activities (Which occur from depositories in soil and "from waste water" . . .[2] causing the final proposal in which Kinder Morgan has addressed the issues of "Safe Drinking Water Act" and has limited its ability to produce efficiently and safely within its boundaries under the new zoning provisions of "housing" within 1.5 miles of hazardous industrial "waste management sites". . . [3]

---

[1] KMP's staff members commonly place lining covers over their cars. This is a clear indication of contaminates being absorbed through the skin from the contamination attached to car fabric, or car filtering systems. This is general, in any-type vehicle, home, office, water way, sound wall, air-conditioning unit, and or waste stream provisions within 1.5 mile distance of the point stack [See Exhibit F, Graphics 1Aa – Dd].

-10-

**CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -**
Case No. 5:07 - cv- 3686

24.     The "cla ot only subject to the contaminatio public and potable water sources, the "class" has become susceptible to KMP's (carbon monoxide poisoning) and other cancerous causing agents expelled through the burning of "fuel exhaust waste". The "class" is also susceptible to Kinder Morgan's alarms, commonly audible during the wet season, as heard at a low decibel range from Casa Del Largo, which increases substantially along Rock Ave "Housing Development" past the 880 freeway sound wall . . . [4]

25.     Kinder Morgan site operations have caused all adjacent areas to be contaminated with heavy metal toxins. The "class" is such industrial sites as, FedEx Shipping, Cloud 9 Limo Service, FIJ Furniture Shipping, and other business and office centers, near Rincon Dr, near Montague Expressway, Kruse Dr, and Coyote Creek. Making this "class" the most vulnerable to fumes of cancer causing agents commonly contaminated through inhalation or ingestion through the exhaust system of their vehicle, and or of any moving or parked

---

[2] *The initial caused concern and or the use of such alternatives (pump-and-treatment system) and or through the use of air-sparging subvention . . . other methods required the immediate removal of UST, and initiated a response time to allow for the natural absorption of contaminates into "ground water" and soil below 8ft. Other "geographical" testing measurements used for soil sampling, water sampling, as assessed by California Regional Water Quality Control Board, San Francisco Bay Region, and Water Testing from Santa Clara valley water District.*

[3] *[See Exhibit G, Graphic 3Aa – 3Dd]. Other methods required the immediate removal of UST, and initiated a response time to allow for the natural absorption of contaminates in the use of "ground water" and re-cycling of rain water". And other "geographical" testing measurements used for soil sampling, water sampling, and air sampling, "assessed by Kinder Morgan Fuel Terminal Facility.*

-11-

**CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -**
Case No. 5:07 - cv- 3686

vehicle, within 5 miles of  "joint stack" in which abatement act... es has caused its own employees to cover their vehicles with a material lining. The initial physical response included intense headache, sinus-pressure, rapid increase of heart and blood pressure, up-set stomach, , uneasiness, stress, and causing an increased certainty to develop tumors" malignant or non-malignant tumors and or "cancer". This is apparent among the "class members" as moles and skin, and or skin wounds become swollen and infected, allowing for the eventual mitigation of tumors under the "class" skin and tissue.

26.    A declaratory judgment will terminate the controversy between the parties.

### VII.    THIRD CAUSE OF ACTION
### (Protection of the Health and Welfare of the General Public)

27.    Plaintiffs repeat and reallege paragraphs 1 through 18.

28.    The First Amendment restricts Congress's power to "make" any law "abridging the freedom of speech, or of the press. Whether the restrictions of the "SEP" are consistent with the requirements of the First Amendment, (the Plaintiff is not allowed to participate in any decision made and or to interfere in the governing party ("City of San Jose Council, Santa Clara Valley Water District, or activities of the EPA") in its decision making process.

29.    Since the sections of the "SEP" are not severable from the remainder of the CEQA, and the action entitled by the Negative Mitigation Declaration. The entire act by all

---

[4] *The addition a sound wall would be impossible, due to the spread of contaminates affecting the geological surroundings in which Defendants has increased the susceptibility of the "class" to contaminates used under NPDES waste stream, and waste waste water run-off provisions.*

-12-

CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL - Case No. 5:07 - cv- 3686

defendants must be decla[red unc]onstitutional, pursuant Title 17, C[alifor]nia Code of Regulations, and ARTICLE 6. CLEAR AND REASONABLE WARNINGS § 12601 (Feb 2003), "whenever a clear and reasonable warning is required under Section 25249.6 of the Act, the method employed to transmit the warning must be reasonably calculated, (however; Kinder Morgan's use of its alarm system has been considered the alternative method used), to make the warning message available to the individual prior to exposure..."[5]

30.  A declaratory judgment will terminate the controversy between the parties.

31.  Defendants failed to protect its citizens form oversight if filing (USC Section 1365 (2007), Federal Water Pollution Control Act or Clean Water Act, 505, Citizen Suits, pg. 213-215. The US Code, 33 U.S.C. §1365 (2005), pursuant C.F.R. Title 40 under this title.

> " If a violator does not comply with the Clean Water Act or with the regulatory agency's enforcement actions, then any person or entity that either is or might be adversely affected by any violation has the right to file a citizen suit against the violator. Citizens can seek injunctive relief (court orders prohibiting the pollution from continuing), civil penalties, and reimbursement of legal costs and attorneys' fees".

32.  The Plaintiff pursuant Citizens Suit 505 (a)..."Except as provided in subsection (b) of this section 309(g)(6), any citizen may commence a civil action on his own behalf—(1) against any person (including (i) the United States, and (ii) any other governmental

---

[5] *Title 17 proposes that "[a] warning to the exposed employee about the chemical in question which fully complies with all information, training and labeling requirements of the federal Hazard Communication Standard" (29 CFR section 1910.1200, as amended on March 7, 1996), the California Hazard Communication Standard (Cal. Code Regs., title 8, section 5194, as amended on March 15, 1999).*

-13-

**CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -**
Case No. 5:07 - cv- 3686

instrumentality or agency, extent permitted by the eleventh a. lment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this Act".

## PRAYER FOR RELIEF

WHEREFORE plaintiffs, on behalf of themselves, all others similarly situated and/or in the interest of the general public as appropriate under the laws and treaties of the United States pray for judgment against defendants as appropriate for each particular causes of action:

a. For the declaratory, equitable, preliminary and permanent injunctive relief, according to statute; and

b. For notice to consumers whose water quality was compromised and reports with the results supplied to the consumer plaintiffs and the consumer class by defendants; and

c. Awarding damages due to reproductive toxicity, heavy metal toxic poisoning and that of a resultant death. due to contamination through provisions provided by the defendants; and

d. Awarding attorneys' fees pursuant to, pro bono/trail lawyer ("for the public good") provided by the Court., and other applicable statutes and for costs of suit; and

e. Awarding plaintiffs cost for medical expenses expected to and incurred due to heavy metal toxic poisoning; and

f. Awarding the plaintiffs the eventual denial of KMP's NPDES application, and or requests for the immediate phase out of Kinder Morgan's "point stack" and requests an immediate shut-down and phase out of operations to include: the abandonment of said "real property"; and

g. Awarding plaintiffs for the amount of compensatory damages of not less than 4.5 million dollars per "class member".

PLAINTIFFS HEREBY REQUEST A JURY TRIAL FOR ALL CLAIMS AND CAUSES OF ACTION TRIABLE BY JURY

Dated: December 10, 2007

By: _____
Amy L. Nilson
Pro Per

-14-

CLASS ACTION SECOND AMENDED COMPLAINT DEMAND FOR JURY TRIAL -
Case No. 5:07 - cv- 3686