AMY L. NILSON
Address: 3735 Senter Road
San Jose, CA 95111
Tel: (408) 401-7924
Email: listcontent@yahoo.com

Attorneys for :
Pro Se Litigant

FILED
2008 JUN 23 P 2: 01
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

AMY L. NILSON

Plaintiff,

V

KINDER MORGAN ENERGY PARTNERS L.P., THE CITY OF SAN JOSE, SAN JOSE WATER COMPANY, SANTA CLARA VALLEY WATER DISTRICT ET AL.

Defendants.

Case No. C07 -03686 JW

**NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT**

PLEASE TAKE NOTICE THAT this is a 60 day notification pursuant to 40 C.F.R. Parts 135.1-135.3, and that Amy L. Nilson ("Nilson") intends to commence an action under 40 CFR Part 403 against Kinder Morgan Energy Partners LP, City of San Jose, San Jose Water Company and that of the

-1-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

Santa Clara Valley Water District pursuant violations under CWA section 301(a), 33 U.S.C. § 1311(a), makes it unlawful for a person to discharge a pollutant from a point source into any navigable waters, defined as "waters of the United States" under CWA section 502(7), 33 U.S.C. § 1362(7), except in compliance with specific CWA sections, including Section 402, 33 U.S.C. § 1342. Pursuant 40 CFR Part 403, pretreatment standards promulgated under § 307(b), § 307(c), and § 307(d) of the NPDES permit.

**INTRODUCTION**

There are two reasons for our defense. The First is whether a citizen seeking civil penalties under Section 505 of the Clean Water Act is constitutionally moot where plaintiffs had standing at the time of the complaint and has shown continuing injury-in-fact but has not obtained injunctive relief.

Second, whether the citizen has brought their complaint in compliance under the Clean Water Act (33 U.S.C. 1251 *et seq.)*, Safe Drinking Water Act (42 U.S.C. 300f *et seq.)*, Clean Air Act (42 U.S.C. 7401 *et seq.)* and Negligence under the Safe Drinking Water and Clean Air Act when used in connection with water pollution control facilities, the Federal Water Pollution Control Act, as amended (33 U.S.C. §1365 et seq.).

Numerous cases confirm that citizens can bring suit against indirect dischargers . . .[1], for violating pretreatment standards, even where the POTW complies with applicable requirements of the CWA. Citizens can seek injunctive relief (court orders prohibiting the pollution from continuing), civil penalties, and reimbursement of legal costs and attorneys' fees. In addition, if a regulatory agency fails to take enforcement actions against a violator of the Clean Water Act or does not get acceptable results from their enforcement actions.

1 For purposes of this section 307(d), a "source" is "any building, structure, facility or installation from which there is or may be the discharge of further pollutants."

-2-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

Negligence under the enforcement of § 300g–3. civil action enforcement responsibility for public water systems (within the meaning of section 300g–2 (a) of this title) that any public water system— (i) for which a variance under section 300g–3, 2(b) Judicial determinations in appropriate Federal district courts; civil penalties, separate violations pursuant under the act . . .[2]

The court may enter, in an action brought under this subsection, such judgment as protection of public health may require, taking into consideration the time necessary to comply and the availability of alternative water supplies; and, if the court determines that there has been a violation of the regulation or schedule or other requirement with respect to which the action was brought, the court may, taking into account the seriousness of the violation, the population at risk, and other appropriate factors, impose on the violator a civil penalty of not to exceed $25,000 for each day in which such violation occurs.

(A) Notice of any failure on the part of the public water system to— (i) comply with an applicable maximum contaminant level or treatment technique requirement of, or a testing procedure prescribed by, a national primary drinking water regulation; or (ii) perform monitoring required by section 300j–4 (a) 40 CFR 122.49 (1984) Considerations under federal law.

42 USC §300j–4 (a) (7) (B) monitoring information collected from a representative sampling of public water systems that serve a population of 10,000 or fewer.

(i) provide for different frequencies of notice based on the differences between violations that are intermittent or infrequent and violations that are continuous or frequent; and

(ii) the existence of the variance or exemption; and

[2] 40 CFR 122.49 Considerations under federal law Clean Water Act (33 U.S.C. 1251 et seq.), Safe Drinking Water Act (42 U.S.C. 300f et seq. ), Clean Air Act (42 U.S.C. 7401 et seq. ) et seq.

-3-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

(iii) any failure to comply with the requirements of any schedule prescribed pursuant to the variance or exemption.

(iv) take into account the seriousness of any potential adverse health effects that may be involved.

Further more the violation of these actions under the Safe Drinking Water Act pursuant 40 CFR § 403.8(b), § 403.8(f) (2), and § 403.12(o) (2). (xii) Ensure that IUs that are out of compliance with the Pretreatment Requirements return to compliance, as required at 40 CFR § 403.8(b) and § 403.8(f)(1)(vi). (xiii) Require IUs, through the issuance of control mechanisms, to install pretreatment systems capable of treating wastewater in a manner sufficient to ensure compliance with Federal categorical standards, as required by 40 CFR § 403.8(b) and § 403.8(f) (1) (iv) (e) Continue to develop its local limits as necessary and effectively enforce such limits, as required at 40 CFR § 403.5(c).

**BACKGROUND**

**A. Santa Clara Urban Runoff Pollution Prevention Program Order No. 99-051 - NPDES No. CAG912003.**

Order No. 99-050 Santa Clara Valley Urban Runoff Pollution Prevention Program NPDES Permit Modification Order No. 99-050 NPDES Permit No. CAS029718 Modification of Waste Discharge Requirements, Order No. 95-180 Santa Clara Valley Water District, City of San Jose, and City of Santa Clara, which have formed together to form the Santa Clara Urban Runoff Pollution Prevention Program Order No. 99-051 - NPDES No. CAG912003 General Waste Discharge Requirements for: Discharge or Reuse of Extracted and Treated Groundwater Resulting from the Cleanup of Groundwater Polluted by Volatile Organic Compounds pursuant under 212 of the CWA, 33 U.S.C. § 1292, which is owned by a state or municipality. POTWs treat domestic and municipal wastes, as well as industrial wastewaters, and discharge treated wastewaters to U.S. waters pursuant to the National Pollutant Discharge Elimination System ("NPDES") permits issued by the California

-4-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

Regional Water Quality Control Board for the San Francisco Bay Region 9.

**B. Direct Wastewater Discharges to Waters of the United States**

"Kinder Morgan Energy Partners LP, and or/ Significant Industrial User is in significant noncompliance if its violation meets one or more of the following criteria:

(A) Chronic violations of wastewater Discharge limits, defined here as those in which 9.96 (VOC's) in violation of the Clean Water Act 33 U.S.C. § 1321.

(B) 99.6 percent increase or more of all of the measurements taken for the same pollutant parameter during a 6-month period exceed Pretreatment Standard or Requirements, including ph limits, as defined by 40 CFR §63.654(i) oxidizing organic hazardous air pollutants.

(C) Violations under the Clean Air Act 42 U.S.C. § 7408(a) (1) (A) which contributed to air pollution which endangered the plaintiff and that of the public health and welfare of the community.

(D) Violation of waste discharge requirements or permits issued pursuant to the Federal Water Pollution Control Act (33 U.S.C. Sec. 1251 et seq.) to exceed its operating capacity while operating a water recycling treatment plant.

Set under section 505(a) (1) (A) of the Clean Water Act ("CWA"). 33 U.S.C. § 1365(a)(1)(A), alleged to be in violation of (A) an effluent standard or limitation under 307(d) of the CWA because of its ongoing failure to comply with the pretreatment standards set forth in its Industrial User Discharge Permit, issued by the local publicly owned treatment works facility ("POTW"), tracing the outflow of the open drain into the creek running adjacent to Kruse Drive reaching from Montague Expressway

entering 880 Freeway under Rock Ave, and into Casa Del Largo Mobile Home Park's sewage system.

However, it remains unclear whether KMEP LP ("San Jose Fuel Terminal"). has increased these violations or the City of San Jose has failed to deny any such application to obtain a temporary permit to dump (VOC's and or/ gasoline waste products into open sources of the POTW system).

That a civil injunction is necessary to abate all violations resulting from the discharge or potential discharge of pollutants into POTW works, and waters of South San Francisco Bay.

**CWA VIOLATIONS**

**A. Violations of Section 307(d) of the CWA**

Section 307(d) of the CWA provides that it is "unlawful for any owner or operator of any source to operate any source in violation of any such effluent standard or prohibition or pretreatment standard."

33 U.S.C. § 1317(d) (emphasis added). Moreover, "[w]here specific prohibitions or limits on pollutants or pollutant parameters are developed by a POTW in accordance with [40 C.F.R. § 403.5(c)], such limits shall be deemed Pretreatment Standards for the purposes of section 307(d) of the Act." 40 C.F.R. § 403.5(d) (emphasis added).

**B. Violations of NPDES permit**

Section 301(a) of the CWA makes it unlawful for any person to discharge any pollutant from a point source into waters of the United States, unless in compliance with a NPDES or other permit.

-6-

**NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS**

33 U.S.C. §§ 1311(a), 1342(a). The CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." The CWA further defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any (pipe, ditch, channel, tunnel, conduit, well, discrete fissure (having a fracture or opening in a bridge, concrete block, ground piping, and or otherwise), etc. This court has authority of this action pursuant the Clean Water Act 33 U.S.C. §§1342(7), "To abate violations of the permit or the permit program, including civil and criminal penalties and other ways and means of enforcement".

Further more the violation of Section 402, 33 U.S.C. § 1342 pursuant 40 CFR § 403.8(b), § 403.8(f) (2), and § 403.12(o) (2). (xii) Ensure that IUs that are out of compliance with the Pretreatment Requirements return to compliance, as required at 40 CFR § 403.8(b) and § 403.8(f)(1)(vi). (xiii) Require IUs, through the issuance of control mechanisms, to install pretreatment systems capable of treating wastewater in a manner sufficient to ensure compliance with Federal categorical standards, as required by 40 CFR § 403.8(b) and § 403.8(f) (1) (iv) (e) Continue to develop its local limits as necessary and effectively enforce such limits, as required at 40 CFR § 403.5(c), including Section 402, 33 U.S.C. § 1342. Pursuant 40 CFR Part 403, pretreatment standards promulgated under § 307(b), § 307(c), and § 307(d) of the NPDES permit.

A User shall have an affirmative defense in any action brought against it alleging a violation of the general prohibitions established in paragraph (a)(1) of this section and (b) in addition to the following pollutants shall not be introduced into a POTW:

(1) Pollutants which create a fire or explosion hazard in the POTW, including, but not limited to, waste streams with a closed cup flashpoint of less than 140 degrees Fahrenheit

or 60 degrees Centigrade using the test methods specified in 40 CFR 261.21.( (2) It is not a liquid and is capable, under standard temperature and pressure, of causing fire through friction, absorption of moisture or spontaneous chemical changes and, when ignited, burns so vigorously and persistently that it creates a hazard).

(2) Pollutants, which will cause corrosive structural damage to the POTW, but in no case Discharges with pH, lower than 5.0, unless the works is specifically designed to accommodate such Discharges;
(3) Solid or viscous pollutants in amounts, which will cause obstruction to the flow in the POTW resulting in Interference; upon request of the POTW, approves alternate temperature limits;
(4) Any pollutant, including oxygen-demanding pollutants (BOD, VOC...·etc.) released in a Discharge at a flow rate and/or pollutant concentration, which will cause Interference with the POTW . . . [3]
(5) Heat in amounts which will inhibit biological activity in the POTW resulting in Interference, but in no case heat in such quantities that the temperature at the POTW Treatment Plant exceeds 40 [deg] C (104 [deg] F) unless the Approval Authority, upon request of the POTW, approves alternate temperature limits.
(6) Petroleum oil, non-biodegradable cutting oil, or products of mineral oil origin in amounts that will cause interference or pass through;
Sec. 403.8 (c) A POTW may develop an appropriate POTW Pretreatment Program any time before the time limit set forth in paragraph (b) of this section. The POTW's NPDES Permit will be reissued or modified by the NPDES State or EPA to incorporate the

[3] [Clean Air Act U.S.C. § 7408(a) (1) (A)] which contributed to air pollution (which endangered the plaintiff) and that of the public health and welfare of the community through aeration process of $CO^2$ and VOC emissions.

-8-

**NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS**

approved Program as enforceable conditions of the Permit. The modification of a POTW's NPDES Permit for the purposes of incorporating a POTW Pretreatment Program approved in accordance with the procedure in Sec. 403.11 shall be deemed a minor Permit modification subject to the procedures in 40 CFR 122.63(e) Cause for re-issuance or modification of Permits. Under the authority of section 402(b)(1)(C) of the Act, the Approval Authority may modify, or alternatively, revoke and reissue a POTW's Permit in order to:

To Put the POTW on a compliance schedule for the development of a POTW pretreatment program where the addition of pollutants into a POTW by an Industrial User or combination of Industrial Users presents a substantial hazard to the functioning of the treatment works, quality of the receiving waters, human health, or the environment; (4) Incorporate an approved POTW Pretreatment Program in the POTW permit; or (5) Incorporate a compliance schedule for the development of a POTW pretreatment program in the POTW permit.

(6) The POTW shall operate pursuant to legal authority enforceable in Federal, State or local courts, which authorizes or enables the POTW to apply and to enforce the requirements of sections 307 (b) and (c), and 402(b)(8) of the Act and any regulations implementing those sections.

Such authority may be contained in a statute, ordinance, or series of contracts or joint powers agreements, which the POTW is authorized to enact, enter into or implement, and which are authorized by State law.

**C. Definitions Under 40 CFR §60.500**

-9-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

Federal Jurisdiction under the CAA 42 U.S.C §7604; promulgated under § 7401(c) promote reasonable Federal, State, and local governmental actions, consistent with the provisions of this chapter, for pollution prevention pursuant under the Act, 40 CFR §60.500 Applicability and designation of affected facility

(a) The affected facility to which the provisions of this subpart apply is the total of all the loading racks at a bulk gasoline terminal, which deliver liquid product into gasoline tank trucks.

40 CFR Part§ 60.501 pursuant definitions, the terms used in this subpart are defined in the Clean Air Act, in §60.2 of this part, or in this section as follows:

*Bulk gasoline terminal* means any gasoline facility, which receives gasoline by pipeline, ship or barge, and has a gasoline throughput greater than 75,700 liters per day. Gasoline throughput shall be the maximum calculated design throughput as may be limited by compliance with an enforceable condition under Federal, State or local law and discoverable by the Administrator and any other person.

*Continuous vapor processing system* means a vapor processing system that treats total organic compounds vapors collected from gasoline tank trucks on a demand basis without intermediate accumulation in a vapor holder.

*Existing vapor processing system* means a vapor processing system [capable of achieving emissions to the atmosphere no greater than 80 milligrams of total organic compounds per liter of gasoline loaded], the construction or refurbishment of which was commenced before December 17, 1980, and which was not constructed or refurbished after that date.

*Flare* means a thermal oxidation system using an open (without enclosure) flame.

-10-

**NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS**

*Gasoline* means any petroleum distillate or petroleum distillate/alcohol blend having a Reid vapor pressure of 27.6 kilopascals or greater which is used as a fuel for internal combustion engines.

*Gasoline tank truck* means a delivery tank truck used at bulk gasoline terminals which is loading gasoline or which has loaded gasoline on the immediately previous load.

*Intermittent vapor processing system* means a vapor processing system that employs an intermediate vapor holder to accumulate total organic compounds vapors collected from gasoline tank trucks, and treats the accumulated vapors only during automatically controlled cycles.

**CHSC VIOLATOINS**

**A. Violations under California Health and Safety Code Sections 106875 - 106910.**

505(a) (1) (A) of the Clean Water Act ("CWA"). 33 U.S.C. § 1365(a) (1) (A). As described below, defendants have violated and continues to violate section 307(d) of the CWA Part 40 C.F.R. § 403.5(d), and California Health and Safety Code Sections 106875 - 106910.

(1) The submission of false or misleading information on an application for a certificate or engaging in dishonest conduct during an examination.

(2) The use of fraud or deception in the course of operating or supervising the operation of a "water treatment plant" ...[4] or a water recycling treatment plant.

(3) The failure to use reasonable care or judgment in the operation or supervision of the operation of a water treatment plant or water recycling treatment plant.

[4] *40 CFR §63.420, means a loading rack equipped with vapor collection and processing systems that reduce displaced vapor emissions to no more than 80 milligrams of total organic compounds per liter of gasoline loaded.*

-11-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

(4) The inability to perform operating duties properly in water treatment plant or water recycling treatment plant.

(5) The failure to meet all requirements for certificate renewal.

(6) The conduct of willful or negligent acts that cause or allow the violation of the Safe Drinking Water Act (Subchapter XII (commencing with Section 300f) of Chapter 6A of Title 42 of the United States Code) or the regulations and standards adopted pursuant to that act.

(7) Willfully or negligently violating or causing or allowing the violation of waste discharge requirements or permits issued pursuant to the Federal Water Pollution Control Act (33 U.S.C. Sec. 1251 et seq.) while operating water recycling treatment plant . . . [5].

(a) Restoration and maintenance of chemical, physical and biological integrity of Nation's waters; national goals for achievement of objective policy that the discharge of toxic pollutants in toxic amounts be prohibited;

- publicly owned waste treatment works;
- waste treatment management planning processes be developed and implemented to assure adequate control of sources of pollutants in each State;

[5]This questions is enlaced in the Jurisdiction and Code Enforcement of a Federal Agency on a Municipal body of Government, whether the "agency is negligible in action", and or if the negligent acts of the City of San Jose ("Environmental Agency") is liable under the statue and code enforcement of the Environmental Protection Agency Laws and Regulations. "affirmed an unqualified rejection accompanied by an opinion which explicitly stated that approval would be forthcoming if modifications were made". [CONNECTICUT FUND FOR THE ENVIRONMENT, INC., et al., Petitioners, v. ENVIRONMENTAL PROTECTION AGENCY, et al., Respondents, No. 52, Docket 81-4025 United States Court of Appeals, Second Circuit. Argued Sept. 23, 1981.Decided Feb. 1, 1982].

-12-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

- develop technology necessary to eliminate the discharge of (VOC or BOD) pollutants into the navigable waters, . . .(adjoining actions of both point and nonpoint sources of pollution) . . .[6]

(2) The use of fraud or deception in the course of operating or supervising the operation of a water distribution system.

(3) The failure to use reasonable care of judgment in the operation or supervision of the operation of a water distribution system.

(4) The inability to perform operating duties properly in water distribution system.

(5) The failure to meet all requirements for certificate renewal.

(6) The conduct of willful or negligent acts that cause or allow the violation of the federal Safe Drinking Water Act (Subchapter XII (commencing with Section 300f) of Chapter 6A of Title 42 of the United States Code) or the regulations and standards adopted pursuant to that act.

(c) Prior to revocation of a valid operator certificate, the department shall provide the certificate holder with an opportunity for a hearing before the department.

(d) For purposes of this section, "water recycling treatment plant" means a treatment plant that receives and further treats secondary and/or tertiary (being or relating to the purification of wastewater by removal of fine particles, nitrates, and phosphates) effluent from a wastewater treatment plant.

**B. Violations of Cal. Health and Safety Code**

106880. The state department shall hold at least one examination each year for the purpose of examining candidates for certification.

[6] Whether the notice of negligent acts is BOD - a chemical procedure for determining how fast biological organisms use up oxygen in a body of water..., used for environmental study as: used as: an assessment of ecological, and environmental matters.

106885. (a) All persons who operate or supervise the operation of water treatment plants shall possess a valid and current water treatment operator certificate or water treatment operator-in-training certificate of appropriate grade in accordance with the regulations referred to in Section 106910.

106910. The department may adopt rules, regulations, and certification standards necessary to carry out the provisions of this article, pursuant to Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code. The rules, regulations, and standards shall include, but not be limited to, the following:

(a) The classification of treatment plants taking into consideration the plant size, character of the water being treated, type and degree of treatment, complexity of operation, and other physical conditions affecting the operation of the water treatment plant.

(b) The classification of distribution systems of community water systems and nontransient noncommunity water systems taking into consideration the complexity and size of the system.

(c) Criteria and standards establishing the level of skill, knowledge, education, and experience necessary to operate successfully or to supervise successfully the operation of specific classes of water treatment plants so as to protect public health.

(d) Criteria and standards establishing the level of skill, knowledge, and experience necessary to operate successfully or to supervise successfully the operation of specific classes of water distribution systems so as to protect the public health.

(e) Criteria and standards for operator certification renewal including continuing education requirements.

(f) Criteria and standards for recertification of an operator when the operator's certificate has lapsed.

(g) Criteria and standards for the availability of designated water treatment operators for each operating shift.

**CAA VIOLATIONS**

**A. Federal Action Under CAA 42 U.S.C. § 7408(a)(1)(A) 40 CFR § 63.421**

Federal Jurisdiction under the CAA 42 U.S.C §7604; promulgated under § 7401(c) promote reasonable Federal, State, and local governmental actions, consistent with the provisions of this chapter, for pollution prevention pursuant under the Act, 40 CFR §60.500(a) The affected facility to which the provisions of this subpart apply is the total of all the loading racks at a bulk gasoline terminal which deliver liquid product into gasoline tank trucks . . . [7]

**40 CFR §63.654 Definitions**

Under 40 CFR §63.654(i) Control device means any equipment used for recovering, removing, or oxidizing organic hazardous air pollutants. Such equipment includes, but is not limited to, absorbers, carbon adsorbers, condensers, incinerators, flares, boilers, and process heaters and under 40 CFR Part 60.501.

(i) A bulk gasoline terminal or pipeline breakout station with a Standard Industrial Classification code 2911 "petroleum refining" that is located within a (adjacent area) and under common control of a ("fuel terminal") and or/ refinery.

[7] "Section 108. 42 U.S.C. 7409(b) (1). Section 108(a)(2), in turn, limits the kind of information to be included in the "criteria" to "the latest scientific knowledge" about effects on health and welfare "which may be expected from the presence of such pollutant in the ambient air." In the Supreme Court of the United States, United States EPA et al., v. Carol M Browner, Administrator of the EPA (April 2000).

That under the definitions of 40 CFR §63.421 Definitions as used in this subpart, all terms not defined herein shall have the meaning given them in the Act; in subparts A, K, Ka, Kb, and XX of part 60 of this chapter; or in subpart A of this part. All terms defined in both subpart A of part 60 of this chapter and subpart A of this part shall have the meaning given in subpart A of this part. For purposes of this subpart, definitions in this section supersede definitions in other parts or subparts.

- Bulk gasoline terminal means any gasoline facility, which receives gasoline by pipeline, ship or barge, and has a gasoline throughput greater than 75,700 liters per day. Gasoline throughput shall be the maximum calculated design throughput as may be limited by
- compliance with an enforceable condition under Federal, State or local law and discoverable by the Administrator and any other person.
- Controlled loading rack, for the purposes of §63.420, means a loading rack equipped with vapor collection and processing systems that reduce displaced vapor emissions to no more than 80 milligrams of total organic compounds per liter of gasoline loaded, as
- measured using the test methods and procedures in §60.503 (a) through (c) of this chapter.
- Equipment means each valve, pump, pressure relief device, sampling connection system, open-ended valve or line, and flange or other connector in the gasoline liquid transfer and vapor collection systems. This definition also includes the entire vapor processing system except the exhaust port(s) or stack(s).
- Flare means a thermal oxidation system using an open (without enclosure) flame.
- Gasoline cargo tank means a delivery tank truck or railcar which is loading gasoline or which has loaded gasoline on the immediately previous load. In gasoline, service means that a piece of equipment is used in a system that transfers gasoline or gasoline vapors.
- Limitation(s) on potential to emit means limitation(s) limiting a source's potential to emit as defined in §63.2 of subpart A of this part.

-16-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

- Operating parameter value means a value for an operating or emission parameter of the vapor processing system (e.g., temperature) which, if maintained continuously by itself or in combination with one or more other operating parameter values, determines that an owner or operator has complied with the applicable emission standard.

The operating parameter value is determined using the procedures outlined in §63.425(b) that for each performance test conducted under paragraph (a) of this section, the owner or operator shall determine a monitored operating parameter value for the vapor processing system using the following procedure:

(1) Sec. 63.427 (a)(1) General prohibitions:

A User may not introduce into a POTW any pollutant(s), which cause Pass Through or Interference. These general prohibitions and the specific prohibitions in paragraph (b) of this section apply to each User introducing pollutants into a POTW whether or not the User is subject to other National Pretreatment Standards or any national, State, or local Pretreatment Requirements.

(2) *Affirmative Defenses.* A User shall have an affirmative defense in any action brought against it alleging a violation of the general prohibitions established in paragraph (a)(1) of this section and the specific prohibitions in paragraphs (b)(3), (b)(4), (b)(5), (b)(6), and (b)(7) of this section where the User can demonstrate that:

(i) It did not know or have reason to know that its Discharge, alone or in conjunction with a discharge or discharges from other sources, would cause Pass Through or Interference; and

(ii)(A) A local limit designed to prevent Pass Through and/or Interference, as the case may be, was developed in accordance with paragraph (c) of this section for each pollutant in the User's Discharge that caused Pass Through or Interference, and the User was in compliance with each such local limit directly prior to and during the Pass Through or Interference; or

-17-

**NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS**

**SDWA VIOLATIONS**

**A. Specific prohibitions**

(B) If a local limit designed to prevent Pass Through and/or Interference, as the case may be, has not been developed in accordance with paragraph (c) of this section for the pollutant(s) that caused the Pass Through or Interference, the User's Discharge directly prior to and during the Pass Through or Interference did not change substantially in nature or constituents from the User's prior discharge activity when the POTW was regularly in compliance with the POTW's NPDES permit requirements and, in the case of Interference, applicable requirements for sewage sludge use or disposal.

In addition, the following pollutants shall not be introduced into a POTW:

(1) Pollutants which create a fire or explosion hazard in the POTW, including, but not limited to, wastestreams with a closed cup flashpoint of less than 140 degrees Fahrenheit or 60 degrees Centigrade using the test methods specified in 40 CFR 261.21; the under §261.21 Characteristic of ignitability.

(a) A solid waste exhibits the characteristic of ignitability if a representative sample of the waste has any of the following properties:

(1) It is a liquid, other than an aqueous solution containing less than 24 percent alcohol by volume and has flash point less than 60 °C (140 °F), as determined by a Pesky-Martens Closed Cup Tester, using the test method specified in ASTM Standard D–93–79 or D–93–80 (incorporated by reference, see §260.11), or a Setaflash Closed Cup Tester, using the test method specified in ASTM Standard D–3278–78 (incorporated by reference, see §260.11), or as determined by an equivalent test method approved by the Administrator under procedures set forth in §§260.20 and 260.21.

(2) Pollutants, which will cause corrosive structural damage to the POTW, but in no case Discharges with pH, lower than 5.0, unless the works is specifically designed to accommodate such Discharges;

(3) Solid or viscous pollutants in amounts, which will cause obstruction to the flow in the POTW resulting in Interference;

(4) Any pollutant, including oxygen-demanding pollutants "Biochemical Oxygen Demand" BOD (and / or any other "Volatile Organic Compounds" VOC's, etc.) released in a Discharge at a flow rate and/or pollutant concentration, which will cause Interference with the POTW.

(5) Heat in amounts, which will inhibit biological activity in the POTW resulting in Interference, but in no case heat in such quantities that the temperature at the POTW Treatment Plant exceeds 40 °C (104 °F) unless the Approval Authority, upon request of the POTW, approves alternate temperature limits.

(6) Petroleum oil, nonbiodegradable cutting oil, or products of mineral oil origin in amounts that will cause interference or pass through;

(7) Pollutants, which result in the presence of toxic, gases, vapors, or fumes within the POTW in a quantity that may cause acute worker health and safety problems;

(8) Any trucked or hauled pollutants, except at discharge points designated by the POTW.

**B. When specific limits must be developed by POTW.**

(1) Each POTW developing a POTW Pretreatment Program pursuant to §403.8 shall develop and enforce specific limits to implement the prohibitions listed in paragraphs (a) (1) and (b) of this section. Each POTW with an approved pretreatment program shall continue to develop these limits as necessary and effectively enforce such limits.

(2) All other POTW's shall, in cases where pollutants contributed by User(s) result in Interference or Pass-Through, and such violation is likely to recur, develop and enforce specific effluent limits for Industrial User(s), and all other users, as appropriate, which, together with appropriate changes in the POTW Treatment Plant's facilities or operation, are necessary to ensure renewed and continued compliance with the POTW's NPDES permit or sludge use or disposal practices.

(3) Specific effluent limits shall not be developed and enforced without individual notice to persons or groups who have requested such notice and an opportunity to respond.

(4) POTWs may develop Best Management Practices (BMPs) to implement paragraphs (c) (1) and (c) (2) of this section. Such BMPs shall be considered local limits and Pretreatment Standards for the purposes of this part and section 307(d) of the Act.

(d) *Local limits.* Where specific prohibitions or limits on pollutants or pollutant parameters are developed by a POTW in accordance with paragraph (c) above, such limits shall be deemed Pretreatment Standards for the purposes of section 307(d) under 40 CFR §63.654(i) oxidizing organic hazardous air pollutants.

**CAA**

**A. PERMIT DEFINITIONS**

The purpose of permitting is to regulate the emissions of air pollutants from equipment within the jurisdiction of the local or state regulatory agency. Permitting provides the regulatory agency with a means of protecting or improving the air quality within their jurisdiction.

Permits will usually include permit conditions under which a particular emission unit or group of emission units will be required to operate. The permit conditions will often be taken directly from

federal and state regulations, although they may also be based on the specific air pollutant-emitting situation at the facility. State and local regulatory agencies have a series of general air quality rules that often contribute to permit conditions. These general rules address visible emissions (or opacity), odor, nuisance, and equipment breakdown provisions. The requirements from these rules are often called facility-wide applicable requirements.

In many cases, the state or local regulatory agency will have been delegated authority by the EPA to administer their rules and regulations. However, the Air Program Manager should ensure that the agency granting the permit has received delegation from EPA for the permit program (i.e., NSR/PSD) involved. If authority has not been delegated to the state or local agency, it will probably be necessary to obtain a permit from the EPA.

Areas located at Kinder Morgan Fuel Terminals have experienced contamination of soil and/or groundwater from past activities. Many of which currently or in the future undergo cleanup or remediation activities. Remediation systems are usually temporary and are only operated until soil and/or groundwater treatment objectives are met. Emissions may result from the release of off-gases from various treatment units and will contain $CO^2$, MTBE, VOC's and, in some cases, HAPs. A POTW usually consists of a number of aerobic, anaerobic, and physical processes.

Aerobic treatment, which is rapid and relatively low in odor, is used typically used for wastewater treatment. The most common aerobic treatment process is activated sludge, where raw wastewater is mixed with a sludge of living aerobic microorganisms. (The sludge is activated in a mechanically aerated tank.) The microorganisms rapidly adsorb and biologically oxidize the organic solids suspended in the wastewater, producing carbon dioxide (and/ or MTBE, and VOC's).

Wastewater treatment facilities may also use anaerobic processes in conjunction with aerobic processes. Sludge (i.e., dead microorganisms) produced in an activated sludge process unit is usually transferred to an anaerobic digester. Biological processes operated under anaerobic conditions with

-21-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

high biochemical oxygen demand (BOD) loading emit methane (CH4), and, to a lesser extent, nitrous oxide (N2O) and CO2.

Typically Negligible
[Only Non-regulated Emissions
such as Carbon Dioxide ($CO_2$)]

Sanitary or
Domestic
Wastewater

Treated Water
and Sludge

*Aerobic Activity*

© (2008) US Air Force Guide to Quality Air Quality Management

The use of such measures under the Clean Air Act 42 U.S.C. § 7408(a) (1) (A) contribute to air pollution which may reasonably be anticipated to endanger public health or welfare.

40 CFR 60.1 to 60.18 (General Provisions), Subpart Kb, 40 CFR 60.110b to 60.117b (Standards of Performance for Volatile Organic Liquid Storage Vessels), and Subpart XX, 40 CFR 60.500 to 60.506 (Standards of Performance for Bulk Gasoline Terminals) apply to this installation.

**B. Records & Miscellaneous**

At all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any equipment approved under this Approval Order, including associated air pollution control equipment, in a manner consistent with good air pollution

control practice for minimizing emissions.

Determination of whether acceptable operating and maintenance procedures are being used will be based on the information available to the Executive Secretary which may include, but is not limited to, monitoring results, opacity observations, review of operating and maintenance procedures, and inspection of the source.

EPA to administer their rules and regulations. However, the Air Program Manager should ensure that the agency granting the permit has received delegation from EPA for the permit program (i.e., NSR/PSD) involved. If authority has not been delegated to the state or local agency, it will probably be necessary to obtain a permit from the EPA.

**C. Community Right-To-Know Act of 1986**

Community Right-To-Know Act of 1986" 42 U.S.C. 11023 (g) (1) (A) provide for the name and location of, and principal business activities at, the facility;

(C) provide for submission of each of the following items of information for each listed toxic chemical known to be present at the facility:

(1) Whether the toxic chemical at the facility is manufactured, processed, or otherwise used, and the general category or categories of use of the chemical.

(i) An estimate of the maximum amounts (in ranges) of the toxic chemical present at the facility at any time during the preceding calendar year.

(ii) For each wastestream, the waste treatment or disposal methods employed, and an estimate of the treatment efficiency typically achieved by such methods for that wastestream.

(iii) The annual quantity of the toxic chemical entering each environmental medium.

-23-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

Pursuant under 42 U.S.C. § 9601(9)(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, (A) discharges in compliance with a permit under section 402 of the Federal Water Pollution Control Act [33 U.S.C. 1342], (B) discharges resulting from circumstances identified and reviewed and made part of the public record with respect to a permit issued or modified under section 402 of the Federal Water Pollution Control Act and subject to a condition of such permit: (C) continuous or anticipated intermittent discharges from a point source, identified in a permit or permit application under section 402 of the Federal Water Pollution Control Act, which are caused by events occurring within the scope of relevant operating or treatment systems.

If a release of an extremely hazardous substance referred to in section 11002 (a) of this title occurs from a facility at which a hazardous chemical is produced, used, or stored, and such release requires a notification under section 103(a) of the Comprehensive Environmental Response.

**B. Definitions under Title V of the 1990 Clean Air Act emissions in tons per year includes the general conditions and use of:**

Storage Tank 40 CFR 60 Subpart Kb
Type: Fixed Roof
Service: Ethanol
Capacity: 1,540,000 gallons

Storage Tank 40 CFR 60 Subpart Kb
Type: Internal Floating Roof
Service: Gasoline
Fuel Loading Rack

40 CFR 60 Subpart XX
Attached equipment:
Type: Vapor collection system
Flare Device
Fuel Type Natural Gas, Vapor Collection System Off-gas

i. The flare device listed in condition #7-E shall control process streams from the vapor collection system attached to the fuel loading racks.

ii. All exhaust air from the fuel loading rack vapor collection system shall be routed through, and combusted within the flare device before being vented to the atmosphere.

Federal Limitations and Requirements 40 CFR 60.1 to 60.18 (General Provisions), Subpart Kb, 40 CFR 60.110b to 60.117b (Standards of Performance for Volatile Organic Liquid Storage Vessels), and Subpart XX, 40 CFR 60.500 to 60.506 (Standards of Performance for Bulk Gasoline Terminals) apply to this installation.

Rate of pollutants Tons/yr includes:

A. NOx..........................................................8.78

B. CO..........................................................21.94

C. VOC........................................................46.15

D. HAPs

Total HAPs...........................................0.93

**FOIA**

**A. FOIA and Privacy Act 2002**

§38:37 of the Act requires that each agency, in accordance with published rules, make available for public inspection and copying (under the meaning of [5 U.S.C.A. 552(a) (2) 2002)].

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

(C) administrative staff manuals and instructions to staff that affect a member of the public;

(D) copies of all records, regardless of form or format, which have been released to any person under paragraph (3) and which, because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; and

(E) a general index of the records referred to under subparagraph (D);

(C) (ii) For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

(iii) Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing the request (or a modified request) under clause
(ii) after being given an opportunity to do so by the agency to which the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

(E)(i) Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records--

(I) in cases in which the person requesting the records demonstrates a compelling need; and

(II) in other cases determined by the agency.

(ii) Notwithstanding clause (i), regulations under this subparagraph must ensure--

(I) that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request; and

(II) expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing.
(iii) An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing under this subparagraph. Agency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review under paragraph (4), except that the judicial review shall be based on the record before the agency at the time of the determination.

(iv) A district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request.

(v) For purposes of this subparagraph, the term "compelling need" means--

(I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

(II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

(vi) A demonstration of a compelling need by a person making a request for expedited processing shall be made by a statement certified by such person to be true and correct to the best of such person's

-26-

**NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS**

knowledge and belief.

(F) In denying a request for records, in whole or in part, an agency shall make a reasonable effort to estimate the volume of any requested matter the provision of which is denied, and shall provide any such estimate to the person making the request, unless providing such estimate would harm an interest protected by the exemption in subsection (b) pursuant to which the denial is made.

**PERSONAL INJURY**

**A. Carbon Monoxide, MTBE and or VOC Poisoning of Plaintiff**

Amy L. Nilson has been injured in that the plaintiff was hospitalized for seven days due to severe mental distress and severe carbon dioxide poisoning effecting muscles by causing a twitching sensation in the neck, arms and leg muscles, and severe pain in kidneys from the time of noticed injuries on or before May of 2006 – July 2008.

Amy L. Nilson has been injured in that the plaintiff has experienced severe nausea and symptoms exhibiting vomiting, from Carbon Dioxide Poisoning, MTBE and (VOC's), on or before recurring symptoms were recognized by plaintiff as such on or before May of 2006 – July of 2008.

Amy L. Nilson has been injured in that the plaintiff has experienced and did development infection on skin areas, discharge from (mullet seed size opening) on the right breast, severe sensitivity and pain from lymph nodes and breast tissue and skin on the plaintiff's body caused by MTBE, carbon dioxide and or VOC's and or/ in which causes the combining of hemoglobin, the red blood pigment to form pink carboxyhemoglobin and/ or/ caused by the dumping and or release cancer causing agents into POTW system; which effected the plaintiff on or before May of 2006 – April of 2008.

Amy L. Nilson has been injured in that the plaintiff has experienced increased medical costs for Ambulance Services, Hospitalization and for services rendered by Stanford Medical Clinics for Heavy Metal Toxic Blood Poisoning Test, Mammography, Emergency Room, and Out Patient

-27-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

Care on or before May of 2006 - January of 2008.

**B. Carbon Monoxide, MTBE and or VOC Poisoning of Surrounding Community**

The City of San Jose and Santa Clara Valley Water District and San Jose Water Co. has failed to take action to prevent the contamination of the general public through allocation of resources controlled and operated by the Defendants Kinder Morgan Energy Partners LP., thereby failing to perform nondiscretionary duty required by 40 C.F.R. 403 et seq.

Kinder Morgan Energy Partners LP, The City of San Jose, Santa Clara Valley Water District, and San Jose Water Company is hereby placed on written notice of Amy L. Nilson's intention to commence suit over this matter. Amy L. Nilson's action will seek all available remedies necessary to ensure complete execution of the Defendants' duties under the CWA, SDWA and CAA.

**INJUNCTIVE RELIEF, PENALTIES AND DAMAGES**

1. Injunctive Relief: Injunctive and equitable relief, costs, attorney and expert witness fees, and such other relief as may be appropriate, along with potential supplemental state law and common law claims, where applicable.

a. for a temporary restraining order, preliminary and permanent injunctions compelling all Defendants and its agents;
b. to discontinue dumping gasoline waste products into POTW;
c. compliance with the provisions of the Freedom of Information Act and production of materials and information wrongfully withheld from the Plaintiff;

Penalties: $25,000/day for a violation pursuant under 33 U.S.C. §1319(c) in those determining civil penalties, the court will consider:

a. seriousness of the violation under NPDES permits;
b. abatement process under "Temporary Permits";
c. Environmental Impact to Surrounding Area;
d. Failure to insure safety features used in good-faith efforts to achieve compliance with (NPDES) permit applications;
e. economic impacts of violation; and

-28-

NOTICE OF INTENT TO FILE SUIT FOR PERSONAL INJURY AND OR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER THE WATER POLLUTION CONTROL ACT - Case No. 5:07 - cv- 3686 JW/RS

f. such other matters as justice may require.

2. Costs: Court may award to Plaintiff citizen the costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or prevailing party.

3. Damages: to be established at pre-trial investigation and trial for actual and/ or future damages according to proof, and/ or award of such damages.

4. Other relief as the Court may deem just and proper.

**PARTIES GIVING NOTICE**

The full name, address, and telephone number of the party providing notice is:
Amy L. Nilson
3735 Senter Road
San Jose, Ca 95111
(408) 509-6872
listcontent@yahoo.com

**CONCLUSION**

Amy L. Nilson hereby has given notice of a claim for Personal Injury under the Federal Water Pollution Control Act.

During the sixty (60) day notice period, Amy L. Nilson will be available to discuss actions that might be taken in suit.

Respectfully submitted,

DATED: July _____, 2008

AMY L. NILSON
Pro Se Litigant

/s/ Amy L. Nilson

______________________________
AMY L. NILSON
Pro Se Litigant

Amy L. Nilson
3735 Senter Road
San Jose, Ca 95111
(408) 509-6872
listcontent@yahoo.com

-29-

NOTICE OF INTENT TO FILE SUIT FOR FAILURE TO PERFORM NONDISCRETIONARY DUTY UNDER CLEAN WATER AND SAFE DRINKING WATER ACTS
Case No. 5:07 - cv- 3686 JW/RS